**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRANCIS DIDONATO on behalf of himself and all others similarly situated )<br><br>Plaintiffs, )<br><br>v. )<br><br>GS SERVICES LIMITED PARTNERSHIP, FINANCIAL ASSET MANAGEMENT SYSTEMS, INC.<br>Defendants. | Case Number<br><br>**NATIONWIDE CLASS ACTION COMPLAINT** |

**PLAINTIFF'S COMPLAINT**

1.     Plaintiff Francis DiDonato ("DiDonato" or "Plaintiff"), on behalf of himself and those similarly situated, by and through his undersigned counsel, hereby files this complaint against GS Services Limited Partnership and Financial Asset Management Systems, Inc. (together, "Defendants") upon personal knowledge as to those matters within his knowledge, and upon information and belief as to all other matters, as follows:

**I.**
**PRELIMINARY STATEMENT**

2.     For the last fifteen years, commercial lenders like Sallie Mae, Navient Corporation, Wells Fargo, Citibank and others have been engaged in a massive effort to defraud student debtors.  Specifically, these commercial lenders have been originating and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans.  Lenders have done this in order to discourage debtors from seeking their rights to relief under Title 11 of the Bankruptcy Code and to allow creditors to continue to collect

1

on discharged loans after a debtor's bankruptcy.  In order to effectuate this illegality, lenders have engaged the services of Defendants to attempt to collect on a class of debt that they know is discharged.  Defendants are willfully and maliciously engaged in a pattern and practice that they know subverts the proper workings of the bankruptcy process and violates federal law.  Plaintiff brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. to enforce his rights and the rights of those similarly situated under law.

## II.
### PARTIES

3.      FRANCIS DIDONATO is an individual and a resident of this district who filed for relief under Title 11 of the Bankruptcy Code in this Court in 2019.

4.      The CLASS MEMBERS are similarly situated individuals who have declared bankruptcy since 2005 in the various districts courts of the United States with loans that do not meet the definition of a non-dischargeable qualified education loan in IRC 221(d) and 11 U.S.C. § 523(a)(8)(B) and on which Defendants attempted collection post-discharge.

5.      GS SERVICES LIMITED PARTNERSHIP is a "debt collector" under the FDCPA because it routinely engages in collecting on post-defaulted debt that it does not own.  GS SERVICES LIMITED PARTNERSHIP is a national company with its principle place of business in Pennsylvania.

6.      FINANCIAL ASSET MANAGEMENT SYSTEMS, INC. is a "debt collector" under the FDCPA because it routinely engages in collecting on post-defaulted debt that it does not own.  FINANCIAL ASSET MANAGEMENT SYSTEMS, INC. has its principle place of business in Georgia.

2

### III.

### JURISDICTION AND VENUE

7.      This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because this case arises under federal law.

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the complained of conduct occurred in this district.

### IV.

### STATEMENT OF FACTS

**Section 523(a)(8) Of The Bankruptcy Code.**

9.      In 1978, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship) to address a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation.

10.     11 U.S.C. § 523(a)(8) excluded from bankruptcy discharge government loans that became due more than five years prior to the bankruptcy petition, repayment of which would not cause "undue hardship" on the debtor.

11.     Subsequent amendments, which lengthened and eventually eliminated the five-year non-dischargeability time frame for loans by the federal government, have made it has become increasingly difficult for debtors to ever attain discharges of those student loan debts.

12.     While there is considerable debate about how significant the problem of students abandoning their loans through bankruptcy was, it is clear that the purpose of the

3

1978 legislation and subsequent amendments was to protect government issued student loans from bankruptcy discharge.

13.     That changed in 2005 following extensive lobbying by private education lenders and debt collectors.  The Bankruptcy Abuse and Consumer Protection Act Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereinafter "BAPCPA") expanded the definition of non-dischargeable student debt to include "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986."  11 U.S.C. §523(a) (8) (B).

14.     Section 221 (d)(1) of the Internal Revenue Code of 1986 (26 U.S. C. §221(d)(1)) defines a qualified educational loan as one that is used to pay for "qualified higher education expenses."  In turn, a "qualified higher education expense" is one that is used to pay for the cost of attendance at a qualified educational institution by an eligible student.  26 U.S.C. §221(d)(2).

15.     Thus, BAPCPA made some private student loans dischargeable, but only loans that were made for qualified higher education expenses at a qualified educational institution for eligible students ("Qualified Education Loans").

16.     Originally, the private lending mirrored the federal loans in that the loans were paid directly to the qualified educational institution, which would then ensure that the funds were used only for qualified expenses.  However, the private lenders chafed under what they believed were excessive bureaucratic hurdles; the paperwork was burdensome, schools would not certify sums in excess of tuition, schools would not certify loans for ineligible students, and it prevented lending to thousands of for-profit colleges and high

schools that had not obtained Title IV accreditation and thus were not qualified educational institutions.

17.     To remove those burdens and expand their lending pool, lenders initiated new programs that bypassed the qualified schools completely and instead lent money directly to student borrowers.  By circumventing the schools private lenders significantly increased the total amount of loans that they originated by lending money that exceeded the scope of 11 U.S.C. §523(a)(8)(B).

18.     However, the increased ease of lending and total scope of originated loans came at a price.  While the loans were much easier to originate (because they were not required to meet the certification requirements imposed by 11 U.S.C. §523(a)(8)(B)) and were potentially larger, they were no longer within the scope of non-dischargeability under that statue.  Instead, these loans ("Consumer Education Loans") were simply unsecured consumer debts (like student credit card debt) and thus were discharged automatically upon entry of a discharge injunction.

*Application Of 523(a)(8) Relies On Creditor Good Faith*

19.     Prior to the 2005 amendment, section 523(a)(8) was easy to apply because essentially all student loans were made by the federal government under the guidelines for non-dischargeability.  Thus, if a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of "undue hardship."  This fueled the belief that all student loans are non-dischargeable.

20.     However, private lenders were only given qualified protection in 2005, and section 523(a)(8)(B) only excepts private education loans from discharge that are made for qualified higher education expenses at a qualified educational institution; any other  private

loan is unsecured and is discharged in bankruptcy in the same manner as any other unsecured debt.

21.     This situation created an opportunity for unscrupulous creditors to exploit the application of section 523(a)(8) and to deceive debtors into thinking that all private student loans, like their federal cousins, were excepted from discharge when some were not.

22.     When a debtor files a bankruptcy petition, the debtor includes all unsecured debts on a Schedule F form, listing only the amount of the debt, the name of the creditor, and the consideration received.   After demonstrating compliance with the Bankruptcy Code, a court then issues an order discharging all pre-petition debts listed on the bankruptcy petition except for those listed in section 523(a).   Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge.   Rather, it states only that the order does not discharge some debts, including "debts for most student loans."

***Lenders Used The Presumption Of Non-Dischargeability To Mislead Student Borrowers***

23.     Not content with the protections won from Congress in 2005, commercial lenders devised a scheme to manipulate the widespread belief of non-dischargeability and deceive debtors and the bankruptcy courts into thinking that all private student loans, both qualified and non-qualified, both accredited and unaccredited, were excepted from discharge.

24.     To effectuate this fraud, lenders represented to student debtors that the Bankruptcy Code prohibited discharge of <u>any</u> loan made to any person for any educational purpose.   As described above, that is not true and only private loans that met the

requirements of section 523(a)(8)(B) were non-dischargeable.  Lenders also failed to disclose facts and information that would inform debtors of the fact that private loans were only non-dischargeable if they met the requirements of section 523(a)(8)(B), and in particular, that Class Members' non-qualified loans were, in fact, discharged in bankruptcy.

25.    Thus, a law that was originally designed to prevent students from taking advantage of the bankruptcy system by borrowing and then discharging debt that was incurred in attending an accredited school, instead enabled unscrupulous creditors to defraud vulnerable and unsophisticated student borrowers.

26.    During the same time that they were misrepresenting the nature of student loans to debtors, lenders also were securitizing these debts for sale on the secondary market.  Lenders were rightfully concerned that if they represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would discover the misrepresentation (through an examination of the statue), and the issuers would be liable for securities violations.  Major lenders and underwriters therefore included in student loan asset-backed securities' prospectuses language warning investors that, pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge. For example, a Navient Supplementary Prospectus to Student Loan Trust 2015-3 Prospectus Dated June 3, 2015 specifically represented:

> Currently, private education loans made for qualified education expenses are generally not dischargeable by a borrower in bankruptcy. Private education loans can become dischargeable if the borrower proves that keeping the loans non-dischargeable would impose an undue hardship on the debtor and the debtor's dependents. In addition, direct-to-consumer loans are disbursed directly to borrowers based upon certifications and warranties contained in their promissory notes, including certification of the borrower's cost of attendance. This process does not involve school enrollment verification as an additional criteria and, therefore, may

> be subject to some additional risk that the loans were not used for
> <u>qualified education expenses and thus could become dischargeable</u>
> <u>in a bankruptcy proceeding.</u> If you own any notes in a related issuing
> entity, you will bear any risk of loss resulting from the discharge of
> any borrower of a private education loan to the extent the amount of
> the default is no. (emphasis added).

27.     Thus, lenders were aware of the confusion that could exist even for sophisticated parties with regard to the dischargeability of private student loans and made affirmative disclosures in that area, but made no such disclosures to debtors who were being pursued in an attempt to collect discharged debt.

***Plaintiff DiDonato's Loans Were Unsecured Loans That Were Discharged In Bankruptcy***

28.     From 2001-2008, DiDonato was a medical student at Temple University.

29.     DiDonato received scholarships and federal loans to cover his full "Cost of Attendance" at Temple University.

30.     In addition, DiDonato borrowed several Tuition Answer Loans from Sallie Mae totaling more than $50,000 during the 2006-2007 academic year ("the Debts" or "Plaintiff's Consumer Education Loans").

31.     These Tuition Answer Loans were not made solely for the "cost of attendance" and accordingly were not "qualified education loans" as that term is defined in 11 U.S.C. § 523(a)(8)(B).

32.     In December 2018, DiDonato sought relief under Title 11 in this Court.

33.     DiDonato properly scheduled the Tuition Answer Loans on Schedule F of his petition.

34. In April 2019, this Court ordered discharge of all Plaintiff's properly scheduled pre-petition debt.

35. Navient was duly notified of the discharge of all of Plaintiff's pre-petition debts.

36. However, instead of treating the Debts as discharged Navient thereafter engaged the services of Defendants to attempt to collect on these discharged Debts in violation of federal law

37. On June 13, 2019 Defendant GS Services Limited Partnership sought to collect on the discharged debts by sending a dunning letter offering to settle the outstanding balance of $197,514 for $13,718.

38. On January 6, 2020, Defendant Financial Asset Management Systems. Inc. sought to collect on the discharge debts by sending a dunning letter offering to settle the outstanding balance of $197,514 for $12,804.

39. These letters were in violation of the FDCPA because they were a misrepresentation of the legal status and character of the debt and were attempts to collect debts that were legally prohibited from being collected.

40. These letters were false and misleading in that they stated that the debt was due and owing when in fact it was discharged in bankruptcy.

***All Class Members Share A Similar Narrative.***

41. All Class Members share a similar factual narrative.

42. All Class Members borrowed Consumer Education Loans in amounts that exceeded the "Cost of Attendance," were made to non-title IV schools, or were made to

ineligible students and thus were not qualified educational expenses that were exempted from discharge by 11 U.S.C. §523(a)(8).

43.     All Class Members filed for bankruptcy protection in various district courts of the United States.

44.     At the conclusion of these bankruptcy cases, all Class Members were issued discharge orders.

45.     These Discharge Orders extinguished all education-related debt that was not excepted from discharge by 11 U.S.C. § 523(a)(8).

46.     Notwithstanding the discharge of these debts, Defendants employed processes, practices and acts designed to mislead Class Members into believing that their debts were not discharged and inducing them to make payments on the extinguished debts.

47.     Defendants have misled Class Members and sought to collect on discharged debts through various means, including but not restricted to, the use of dunning letters, emails and phone calls demanding repayment.

**V.**

**CLASS ACTION ALLEGATIONS**

48.     Pursuant to Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and all other persons similarly situated, as a representative of the following class:

49.     Citizens of the various states who filed for bankruptcy in any of district courts of the United States and were issued Discharge Orders since April 20, 2005 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act), who:

a) Obtained Consumer Education Loans that were discharged in bankruptcy by virtue of any of the three characteristics: (1) were made to students attending non-Title IV schools; (2) were made in excess of the "cost of attendance"; (3) were made to ineligible students under the Higher Education Act;

b) have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts and have or have not repaid these loans since bankruptcy.

50.    Plaintiffs reserve the right to amend the definition of the class and/or add subclasses to include or exclude members.

51.    As described below, this action satisfies the numerosity, commonality, typicality, superiority, predominance, and adequacy of representation requirements of Rule 23 of the Federal Rules of Civil Procedure.

**A. <u>Numerosity</u>**

52.    The persons in the class of plaintiffs are so numerous that joinder of all members is impracticable.  In the interest of judicial economy, this dispute should be resolved through class action.

53.    Upon information and belief, plaintiff Class Members have been through the bankruptcy process during the last decade and the number of plaintiffs will likely exceed 10,000.  The quantity, identity, and location of class members are ascertainable through appropriate discovery and may be identified by the records maintained and possessed by Defendants.

54.     Upon information and belief, the individual members of the class of plaintiffs, or at least a large portion thereof, lack the means to pursue these claims individually and severally.

**B.  <u>Commonality</u>**

55.     There are common questions of law/fact affecting the entirety of the class. Specifically, predominant common questions include without limitation:  (i) whether the Class Members' loans were discharged at the conclusion of their bankruptcy cases; and (ii) whether Defendants violated the FDCPA by seeking to collect on discharged private education debt.

56.     Answers to these common questions will drive the resolution of the injuries shared by each member of the class.

**C.  <u>Typicality</u>**

57.     Plaintiff's claims against Defendants are representative of those of all Class Members.  Specifically, DiDonato's Loans are identical in nature to the Class Members' discharged loans on which Defendants attempted collection.

**D.  <u>Predominance and Superiority</u>**

58.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members.  The questions include, but are not limited to:

(i) whether the Class Members' Consumer Education Loans were discharged at the conclusion of their bankruptcy cases; and

 (ii) whether Defendants violated the FDCPA by seeking to collect on discharged debt.

59.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications for individual members which would establish conflicting standards of conduct for the parties opposing the Class.  Such identical actions would also, as well as a practical matter, be dispositive of interests of other members not parties to the adjudications and would substantially impair or impede their ability to protect their interests.

60.     Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunction relief or corresponding declaratory relief with respect to the Class as a whole.

61.     A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

**E.  Adequacy of Representation**

62.     DiDonato will fairly and adequately represent and protect the interests of the members of the class of plaintiffs.  DiDonato's interests are squarely aligned with those of individual members of the class.  Plaintiff's counsel, Boies Schiller and Flexner LLP and Smith Law Group LLP, are experienced in class actions lawsuits, complex commercial litigation, bankruptcy law and procedure, and student loan litigation.

# VI.

## CLAIMS FOR RELIEF

### Count One: Violation of the Fair Debt Collection Practices Act

63.     Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

64.     Defendants are "debt collectors" for the purpose of 15 U.S.C. 1692a because they regularly engage in the collection of post-defaulted debt that they do not own.

65.     Plaintiff is a "consumer" for the purposes of 15 U.S.C. 1692a because he is a natural person who Defendants claim owed a debt.

66.     Plaintiff's Consumer Education Loans are "debts" because they were incurred primarily for personal purposes.

67.     Defendants violated 15 U.S.C. 1692e on June 19, 2019 and January 6, 2020, and at any other time that they sought to collect on Plaintiff's discharged debt, thereby misrepresenting the legal character and status of the debt.

68.     Plaintiff is entitled to statutory damages, actual damages and attorneys' fees under 15 U.S.C. 1692k.

## JURY DEMAND

Pursuant to his rights under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER

69.     In light of the foregoing, Plaintiff and Class Members request that Defendants be cited to appear and judgment be entered against Defendants for:

14

(1)   actual damages and statutory damages for violations of the FDCPA;

(2)   disgorgement;

(3)   attorneys' fees and costs to the fullest extent permitted under the law;

(4)   pre-judgment and post-judgment interest; and

(5)   other such relief as the Court deems just and proper.

Respectfully submitted,

By:   _____

**BOIES SCHILLER FLEXNER LLP**
George F. Carpinello
Adam R. Shaw
30 South Pearl St., 11th Floor
Albany, NY 12207
(518) 434-0600

**SMITH LAW GROUP**
Austin Smith
3 Mitchell Place
New York, New York 10017
(917) 992-2121

Dated March 10, 2020