UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
        :
FRANCIS DIDONATO,         :
                               Plaintiff,       :
        :             20 Civ. 2154 (LGS)
                 -against-                  :
        :             **OPINION AND ORDER**
GC SERVICES LIMITED PARTNERSHIP,    :
FINANCIAL ASSET MANAGEMENT         :
SYSTEMS, INC.,         :
                               Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Francis DiDonato brings this putative class action alleging that Defendants GC Services Limited Partnership ("GC Services") and Financial Asset Management Systems, Inc. ("FAMS") collected on private student loans discharged in bankruptcy proceedings and, in doing so, misrepresented the character and legal status of those loans in violation of 15 U.S.C. § 1692e of the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff seeks actual and statutory damages, disgorgement, attorneys' fees, costs and interest. Plaintiff moves for class certification on his FDCPA claim pursuant to Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(3). For the following reasons the motion is denied.

**I.     BACKGROUND**

    **A. Overview of The FDCPA Claim**

        This is a putative class action in which the named Plaintiff alleges that Defendants misrepresented Plaintiff's and putative class members' private student loans as due and owing, when the loans had been discharged in bankruptcy proceedings. Plaintiff contends that these misrepresentations violate the FDCPA, a strict liability statute, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt,"

including false representations of "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e; *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017) ("The FDCPA is a strict liability statute").

Whether Defendants made misrepresentations depends upon whether Plaintiff's and potential class members' private student loans were in fact discharged.

Section 523(a) of the Bankruptcy Code excepts from discharge:

> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8).  "This dense language means that three categories of educational debt cannot be discharged in bankruptcy:  (1) loans and benefit overpayments backed by the government or a nonprofit; (2) obligations to repay funds received as an educational benefit, scholarship, or stipend; and (3) qualified private educational loans."  *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 601 (2d Cir. 2021).   Conversely, a student loan is discharged if it does not fall within one of these three categories of § 523(a)(8).  Loans that fall within one of the three categories are non-dischargeable unless not discharging them would impose "undue hardship on the debtor or debtor's dependents."  § 523(a)(8).  "The creditor bears the burden of establishing that a debt is excepted from discharge."  *Homaidan*, 3 F.4th at 600.

Plaintiff asserts that Defendants are liable for collecting on loans that were discharged because they do not fall within the third category -- qualified educational loans.  Plaintiff asserts that it is undisputed that none of the loans at issue fall within the first two categories, and

therefore that these loans were not discharged and were still subject to collection post-bankruptcy only if they were in the third category. However, Defendants assert that Plaintiff has proposed potential class members whose loans were non-dischargeable by being in the first category -- i.e., loans guaranteed by a governmental unit or made under any program funded in whole or in part by a governmental unit or nonprofit institution. § 523(a)(8)(A)(i); *In re O'Brien*, 419 F.3d 104, 105 (2d Cir. 2005). If Defendant is correct, the problem might be cured by amending the class definition to exclude holders of any such non-discharged loans. In addition, the second category is not at issue here, as the Second Circuit recently held that student loans fall outside the scope of § 523(a)(8)(A)(ii) and do not qualify as "educational benefits." *Homaidan*, 3 F.4th at 600, 604-05 (excluding student loans from § 523(a)(8)(A)(ii) and explaining that "educational benefit" is "best read to refer to conditional grant payments similar to scholarships and stipends").

Assuming then that the third category is the only one at issue, this case turns on whether Plaintiff's loans and those of the putative class members were discharged or were in the third category as "qualified education loans." For a private student loan to be a "qualified education loan" "the student must attend an eligible educational institution[, a Title IV institution,] and the loan must fund only qualified higher education expenses." *Homaidan*, 3 F.4th at 605 n.3 (citing 26 U.S.C. §§ 25(A)(f)(2) and 221(d)). "Qualified higher education expenses" are defined as:

> the cost of attendance . . . at an eligible educational institution, reduced by the sum of--
>
> (A) the amount excluded from gross income under section 127, 135, 529, or 530 by reason of such expenses, and
>
> (B) the amount of any scholarship, allowance, or payment described in section 25A(g)(2).

26 U.S.C. § 221(d)(2)(A)-(B).  Plaintiff asserts that his loans and those of putative class members are not exempt from discharge under this provision (and therefore were discharged in bankruptcy) because the borrower attended a non-Title IV school or (as in his case) because the loan exceeded "the cost of attendance" at a Title IV institution, less any other financial aid, loans, scholarships or grants received by the student.

### B. Facts Specific to the Named Plaintiff

Plaintiff obtained a Doctor of Philosophy degree in Microbiology and Immunology after attending Temple University between 2001 and 2009.  He received $37,250 in Tuition Answer Loans during the 2006 to 2007 academic year and $40,000 in Tuition Answer Loans during the 2007 to 2008 academic year (collectively, the "Tuition Answer Loans").

At the time Sallie Mae issued the Tuition Answer Loans, Temple University was a Title IV school.  Plaintiff's Application and Promissory Note for the 2006 to 2007 loans states:

> Tuition Answer Loan proceeds are solely to pay for a student's qualified higher education expenses at an eligible educational institution.  Definition of the types of expenses considered "qualified higher education expenses" -- for example books, fees, off-campus housing, living expenses, or commuting -- may vary from school to school and may affect a student's ability to qualify for financial aid and the loan amount a student is eligible to receive.

In addition, to receive the 2006 to 2007 loans Plaintiff was required to certify his eligibility and made the following certification:

> [T]his loan is a qualified educational loan as described in Section 221(d)(1) of the Internal Revenue Code of 1986, 26 U.S.C. §221(d)(1), and that therefore this loan is not dischargeable in bankruptcy except pursuant to 11 U.S.C. §523(a)(8).  I understand that I must immediately repay any funds that I receive which cannot reasonably be attributed to meeting the student's qualified higher education expenses related to attendance at the School.

Plaintiff's 2007 to 2008 Application and Promissory Note states that "Tuition Answer Loan proceeds are solely to pay for a student's qualified higher education expenses at an eligible

4

educational institution" and that the loan amounts "may be from $1,500 up to $40,000 (depending on the type of school, and may not exceed the estimated cost of attendance)." In connection with this loan, Plaintiff certified the following:

> I certify that the information contained in the application is true, complete and correct to the best of my knowledge and belief and is made in good faith, that I am eligible for this loan and that I will repay it according to the terms of this Note.

Plaintiff testified at his deposition that he obtained the Tuition Answer Loans to cover his "living expenses and supplies" related to Temple University. However, in connection with his motion to certify a class, Plaintiff contends that the Tuition Answer Loans exceeded the cost of attendance at Temple University. With respect to the degree to which the Tuition Answer Loans exceeded the cost of attendance, Plaintiff makes two sets of irreconcilable assertions. In his declaration, Plaintiff asserts that for the 2006 to 2007 academic year the cost of attendance was $27,379, he received $17,707 in Stafford loans and, therefore, private loans in excess of $10,379 were in excess of the cost of attendance. In addition, he contends that the cost of attendance for the 2007 to 2008 academic year was $28,028, he received $17,854 in federal loans and, therefore, private loans in excess of $10,124 were in excess of the cost of attendance. Plaintiff's memorandum of law (as well as his Rule 56.1 statement with citations to his deposition) asserts that he received scholarships to cover his tuition; for the 2006 to 2007 academic year he received $37,250.00 in Tuition Answer Loans, which exceeded the $12,793.00 of remaining educational expenses; and for the 2007 to 2008 academic year he received $40,000 in Tuition Answer Loans, which exceeded the $12,418.00 of remaining educational expenses.

On December 11, 2018, Plaintiff filed for bankruptcy. *In re Francis Anthony DiDonato*, No. 18-13995 (Bankr. S.D.N.Y. Dec. 11, 2018), ECF No. 1. He listed his Tuition Answer Loans on Schedule F of his bankruptcy petition as unsecured claims. On April 7, 2019, the United

States Bankruptcy Court for the Southern District of New York issued a Discharge of Debtor(s) and Order of Final Decree (the "Discharge Order") granting Plaintiff a discharge under 11 U.S.C. § 727.  *In re Francis Anthony DiDonato*, No. 18-13995 (Bankr. S.D.N.Y. Apr. 7, 2019), ECF No. 12.  The Discharge Order discharges "most . . . but not all" debts, including "debts owed before the debtors' bankruptcy case was filed."  *Id*. at 1.  The Discharge Order contains standard language stating that, "[e]xamples of debts that are not discharged are: . . . debts for most student loans."  *Id*. at 2.  The Discharge Order also states that, "the law is complicated" and recommends "consult[ation] with an attorney to determine the exact effect of the discharge in th[e] case."  *Id*.

On May 9, 2019, Navient, LLC ("Navient"), Sallie Mae's successor, sent a letter to Plaintiff stating that Navient was servicing his loan, which was "back in repayment" and not discharged in bankruptcy, and that Plaintiff was responsible for repaying the balance of the loan.  Navient assigned the Tuition Answer Loans to Defendants.  On June 13, 2019, Defendant GC Services sent Plaintiff a letter seeking to collect on the Tuition Answer Loans with a settlement offer.  On November 25, 2019, January 6, 2020, February 4, 2020, and March 5, 2020, Defendant FAMS sent letters to Plaintiff seeking to collect on the Tuition Answer Loans with settlement offers.

### C. The Proposed Class

Plaintiff seeks to certify the following class pursuant to Rules 23(b)(1)(A) and 23(b)(3):

Citizens of the various states who filed for bankruptcy in any of [the] district courts of the United States and were issued Discharge Orders since April 20, 2005 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act), who:

(a) [o]btained Consumer Education Loans that were discharged in bankruptcy by virtue of any of the [following] three characteristics:  (1) were made to students

>   attending non-Title IV schools; (2) were made in excess of the "cost of attendance"; (3) were made to ineligible students under the Higher Education Act;
>
>   (b) have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts.

Excluded from the proposed class are any debtors who have validly reaffirmed their debts or whose debts were expressly held to be non-dischargeable, and any entity in which any Defendant has a controlling interest or that had a controlling interest in any of Defendants, Defendants' legal representatives, assignees, and successors, the attorneys for Plaintiff and the proposed class and any member of the attorneys' immediate families.

## II.   STANDARD

Under Rule 23(a), plaintiffs may sue as a class only if:

>   (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  A class must also satisfy at least one of the provisions of Rule 23(b).  Fed. R. Civ. P. 23(b).  Here, Plaintiff seeks certification under subsections 23(b)(1)(A) and 23(b)(3).

Rule 23(b)(1) permits class certification if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]"  Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(3) permits class certification if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Rule 23 "does not set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "Rather, a party must not only 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law of fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)" and provide "evidentiary proof" that at least one provision of Rule 23(b) is satisfied. *Comcast*, 569 U.S. at 33 (quoting *Wal-Mart*, 564 U.S. at 350); *accord In re Glob. Brokerage, Inc.*, No. 17 Civ. 916, 2021 WL 1160056, at *6, 11 (S.D.N.Y. Mar. 18, 2021), *report and recommendation adopted*, 2021 WL 1105367, at *1. A motion for class certification requires a "rigorous analysis" that "frequently entail[s] 'overlap with the merits of the plaintiff's underlying claim.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) (quoting *Comcast*, 569 U.S. at 27, 33-34); *In re Allergan Sec. Litig.*, No. 18 Civ. 12089, 2020 WL 5796763, at *5 (S.D.N.Y. Sept. 29, 2020). The plaintiff must establish by a preponderance of the evidence that each of Rule 23's requirements is met. *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017).

### III.   DISCUSSION

As explained below, Plaintiff's motion for class certification is denied. The class cannot be certified because there are serious questions as to whether Plaintiff is a member of the proposed class that preclude satisfaction of Rule 23(a)'s typicality requirement. In addition, the proposed class does not satisfy either Rule 23(b)(1)(A) or 23(b)(3). The mandatory nature of a class certified pursuant to Rule 23(b)(1)(A) and the potential for individualized monetary damages raise due process concerns that defeat class certification under that subsection. Questions of law and fact do not predominate over questions affecting only individual members

of the proposed class, defeating class certification under Rule 23(b)(3).  A final impediment to certification is that the class is a "fail-safe" class.

### A. The Proposed Class Does Not Satisfy Rule 23(a)

The typicality requirement of Rule 23(a)(3) is not satisfied.[1]  Typicality is intended to ensure that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Wal-Mart*, 564 U.S. at 349 n.5); *accord Ferrick v. Spotify USA Inc.*, No. 16 Civ. 8412, 2018 WL 2324076, at *1 (S.D.N.Y. May 22, 2018).  The requirement is met where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *accord Katz v. Prof. Billing Collections, LLC*, No. 20 Civ. 3043, 2021 WL 2418387, at *4 (S.D.N.Y. June 14, 2021).  The named plaintiff

---

[1] Because typicality is not satisfied the proposed class cannot be certified.  The remaining Rule 23(a) requirements do not preclude certification.  Numerosity is not disputed.  In addition, commonality and ascertainability are satisfied.  "[T]here are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2) -- namely, whether Defendant's collection of non-dischargeable student loans and the representations made in connection with collection violated the FDCPA.  The proposed class is ascertainable because it is capable of definition "by objective criteria," *In re Petrobras Sec.*, 862 F.3d at 264 (citing *Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015); *accord de Lacour v. Colgate-Palmolive Co.*, No. 16 Civ. 8364, 2021 WL 1590208, at *4 (S.D.N.Y. Apr. 23, 2021).  For each class member, these criteria are: (1) the cost of attendance, (2) whether the school was a Title IV institution at the time of origination, (3) whether the loan was made under a program funded in part by a nonprofit or governmental unit, (4) whether the class member filed for bankruptcy and the subject student loans were subject to those proceedings and (5) whether those proceedings resulted in a discharge order or dismissal.

must be a member of the class he represents. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

Courts also consider whether the "putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017); *accord de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 337-38 (S.D.N.Y. 2021). "When defendants argue that unique defenses apply to the putative class representative courts analyze the issue under either the typicality or adequacy prongs of Rule 23(a)." *de Lacour*, 338 F.R.D. at 338.

In this case, there are serious questions as to whether Plaintiff is a member of the proposed class he purports to represent. Although Plaintiff attended a Title IV university at the time he received the Tuition Answer Loans and asserts that the Tuition Answer Loans exceeded the cost of attendance (meaning that his loans were discharged and were not qualified educational loans), the certifications that Plaintiff made in connection with his loan applications and promissory notes -- including an agreement to repay funds not used for education expenses -- may preclude him from denying that the Tuition Answer Loans are qualified education loans. "Courts have held that the stated purpose and not the actual use of the loan determines whether a loan is an 'educational loan' excepted from discharged under § 523(a)(8)." *In re Jean-Baptiste*, 584 B.R. 574, 585 (Bankr. E.D.N.Y. 2018) (collecting cases). This approach "'aligns with the broader goal of protecting lenders against debtors who divert educational funds toward other uses' and avoids the problem of irresponsible debtors obtaining a discharge while responsible debtors do not, 'by refocusing the inquiry on the nature and character of the loan.'" *Id*. at 586 (quoting *In re Sokolik*, 635 F.3d 261, 266 (7th Cir. 2011)).

The stated purpose of Plaintiff's Tuition Answer Loans suggests that they are qualified educational loans, contrary to Plaintiff's assertion that they exceeded the cost of attendance. The promissory notes and applications for the Tuition Answer Loans state that the loans were "solely to pay for a student's qualified higher education expenses at an eligible educational institution." To receive the Tuition Answer Loans, Plaintiff certified that he understood the stated purpose of the loans and that he had an obligation to repay any funds that exceeded his educational expenses. Plaintiff did not repay any portion of the Tuition Answer Loans. He testified at his deposition that the purpose of the Tuition Answer Loans was to cover living expenses and supplies related to Temple University. Plaintiff's retention of the full amount of the Tuition Answer Loans suggests that he accepted and used the funds for qualified education expenses. Under the rationale stated in *In re Jean-Baptiste* above, these documents would trump Plaintiff's assertions in this litigation that the loans exceeded the cost of attendance at Temple, and at the very least, these documents would raise questions of fact unique to Plaintiff.

This is enough to find that Plaintiff is not a typical member of the proposed class and potentially is subject to unique defenses that could become the focus of this litigation. *See In re O'Brien*, 419 F.3d at 105 (affirming the bankruptcy court's determination that, pursuant to § 523(a)(8)(i), a student loan was non-dischargeable and noting that the "Promissory Note evidences an educational loan made pursuant to a loan program funded in part by a nonprofit institution"). In addition, Plaintiff has made conflicting statements regarding the degree to which the Tuition Answer Loans may have exceeded the cost of attendance, raising questions about his credibility. *See Bowling v. Johnson & Johnson*, No. 17 Civ. 3982, 2019 WL 1760162, at *6 (S.D.N.Y. Apr. 22, 2019) (explaining that credibility "can be considered in a motion for class certification" "where the plaintiff's credibility is so vulnerable to attack that the plaintiff is

subject to unique defenses making his claim atypical and antagonistic to other members of the class").

Plaintiff points to several cases to support the argument that boilerplate language in a promissory note cannot bootstrap student loans into an exception to discharge. However, to the extent these cases discuss the impact of loan document language on dischargeability, they do not stand for the proposition that loan document language is irrelevant. *See In re Golden*, 596 B.R. 239, 267 (Bankr. E.D.N.Y. 2019) (explaining that "more is required to satisfy the requirements of Section 523(a)(8) than a statement in a loan document that 'either or both' of certain exceptions from discharge may apply"); *In re McDaniel*, 590 B.R. 537, 545 (Bankr. D. Colo. 2018) (finding that the manner in which loans were described in a bankruptcy schedule was not determinative); *In re Wiley*, 579 B.R. 1, 10 (Bankr. D. Me. 2017) (finding that statements within loan documents did not "carry the day" and that the record was "not sufficiently developed to permit a conclusion that the Loans do or do not constitute 'qualified education loans'"). In addition, none of these cases discuss the impact of a plaintiff's agreement to repay any funds that are not used for qualified education expenses. *In re Wiley*, 579 B.R. at 10. Here, the language in Plaintiff's loan documents is relevant, particularly in combination with Plaintiff's decision to keep the Tuition Answer Loans.

### B. The Proposed Class Does Not Satisfy Rule 23(b)

Class certification is also denied because the proposed class cannot be certified under either Rule 23(b)(1)(A) or Rule 23(b)(3), as Plaintiff requests.

#### 1. Rule 21(b)(1)(A)

A class may be certified under Rule 23(b)(1)(A) where "separate actions by . . . individual class members would create a risk of . . . inconsistent or varying adjudications with

respect to individual class members that would establish incompatible standards." Fed. R. Civ. P. 23(b)(1). "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Because Rule 23(b)(1) does not permit a class member to opt-out of the class, class actions brought under this rule are often referred to as 'mandatory' class actions. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 n.13 (1999). The representative and mandatory nature of a Rule 23(b)(1)(A) class in a case seeking individualized monetary damages raises due process concerns. *Cf. Wal-Mart*, 564 U.S. at 360 (relying on the structure of Rule 23 and the Due Process Clause to support its comment that "at least where . . . the monetary relief is not incidental to the injunctive or declaratory relief," claims for monetary relief may not be certified under Rule 23(b)(2)); *see also* 1 MCLAUGHLIN ON CLASS ACTIONS, § 5:3 (17th ed. 2020) ("Although Rule 23(b)(1)(A) certification clearly is unavailable in an action seeking predominantly money damages, there is authority accepting the proposition that incidental money damages are allowable in a Rule 23(b)(1)(A) action . . ."); 2 NEWBERG ON CLASS ACTIONS, § 4:13 (5th ed. 2021) (explaining that Rule 23(b)(1)(A) "and the Constitution's Due Process Clause likely limit monetary relief to that incidental to injunctive relief and to that which would flow to the class as a whole and not require individualized assessments").

Here, Plaintiff seeks only individualized monetary damages. Accordingly, certification is denied under Rule 23(b)(1)(A) because potential class members would not have the opportunity to opt-out of the class and litigate for themselves their entitlement to, and amount of, individual damages. *See Wal-Mart Stores, Inc.*, 564 U.S. at 363 (explaining that "in the context of a class

action predominantly for money damages," the United States Supreme Court has "held that absence of notice and opt out violates due process") (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

### 2. Rule 23(b)(3)

Certification under Rule 23(b)(3) is denied because common issues do not predominate over individual questions surrounding the dischargeability of each potential class member's student loans. Rule 23(b)(3) permits class certification if "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To establish predominance, Plaintiff must show that "[common] questions of law or fact . . . predominate over any questions affecting only individual members," and "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622-23 (1997); *accord Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020). Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Scott*, 954 F.3d at 512 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). To assess predominance courts look to:

> (1) the elements of the claims and defenses to be litigated, (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief, and (3) whether the common issues can profitably be tried on a class[-] wide basis, or whether they will be overwhelmed by individual issues.

*Id*. at 512 (internal quotation marks omitted).

Plaintiff has failed to sustain its burden of showing predominance.  To establish a violation of the FDCPA "(1) the plaintiff [must] be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements."  *Skvarla v. MRS BPO, LLC*, No. 21 Civ. 55, 2021 WL 2941118, at *2 (S.D.N.Y. July 12, 2021) (quoting *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559-60 (E.D.N.Y. 2017)).  Here, Plaintiff contends that Defendants violated 15 U.S.C. § 1692e, which prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including false representations of "the character, amount, or legal status of any debt."  § 1692e.

Common factual and legal issues include whether Defendants are "debt collectors" under the FDCPA and whether Defendants' statements that putative class members' student loans were due constituted misrepresentations of the "character" or "legal status" of the loans.  Defendants' possible defenses may also raise common issues, including Defendants' efforts to verify the legal status of student loans and reliance on representations made by Navient.

Despite these common issues, individual issues predominate.  Plaintiff's claim depends upon whether each putative class member's student loan was in fact discharged in bankruptcy.  For each potential class member a "mini-hearing" as to the dischargeability of his or her student loans would be necessary.  This determination would depend on many individual facts including: (1) the cost of attendance, (2) whether the school was a Title IV institution at the time of origination, (3) whether the loan was made under a program funded in part by a nonprofit or governmental unit, (4) whether the Plaintiff filed for bankruptcy and the subject student loans were subject to those proceedings and (5) the outcome of those proceedings, including whether

they resulted in a discharge order or a dismissal. In addition, as discussed above regarding Plaintiff, facts regarding the stated purpose of each potential class member's loan, any certifications the potential class member made, the potential class member's understanding of the purpose of the loan and the loan documents he or she signed are relevant to determine whether that potential class member's loan was dischargeable.

Navient produced a spreadsheet containing data on the loans that it originated or serviced, were the subject of bankruptcy proceedings from approximately April 20, 2005, to present and were sent to one or both of the Defendants for collection after the borrowers received a discharge in bankruptcy (the "Spreadsheet"). While Plaintiff primarily relies on the Spreadsheet to show numerosity of the potential class, Defendants' objections to the Spreadsheet underscore additional examples of individualized facts needed to assess dischargeability. For example, Defendants argue that the Spreadsheet is insufficient to identify members of the proposed class because it:

- does not reflect that certain data including, without limitation, guarantors, charge-off dates, and school eligibility, may change through the life of a loan;
- includes bankruptcy information associated with loans, not parties, which is problematic because more than one party (i.e., a borrower, cosigner and a dropped borrower) may be associated with a given loan; and
- in some instances, indicates that a discharge order was entered when, in fact, a dismissal order -- which would not result in loan discharge -- was entered.

Inquiries into this information as to each potential class member would predominate over any common issues.

### C. Fail-Safe Class

Class certification is denied for the addition reason that the proposed class is a "fail-safe class." A "fail-safe" class is "one whose definition shields the putative class members from receiving an adverse judgment" and should not be certified. *See, e.g.*, *Lawrence v. NYC Med. Practice, P.C.*, No. 18 Civ. 8649, 2021 WL 2026229, at *6 (S.D.N.Y. May 20, 2021); *Bondi v. New Rochelle Hotel Assocs.*, No. 17 Civ. 5681, 2018 WL 7246962, at *14 (S.D.N.Y. Dec. 7, 2018). "[F]ail-safe classes tend to be defined in terms of a 'legal injury' or 'by reference to a particular statute, regulation, or contract that has been allegedly violated or breached.'" *Garcia v. Execu/Search Grp., LLC*, No. 17 Civ. 9401, 2019 WL 689084, at *2 (S.D.N.Y. Feb. 19, 2019) (quoting *Gregory v. Stewart's Shops Corp.*, No. 14 Civ. 33, 2016 WL 8290648, at *18 (N.D.N.Y. July 8, 2019)). Such classes can be problematic for two reasons. First, they may be unfair to the defendant because they may give a plaintiff a second, unwarranted chance to establish liability. Second, the class may be unmanageable because a determination on the merits would be required to identify class members who would receive notice and an opportunity to opt out. *See Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021) (refusing to certify fail-safe class where the class definition included two contested elements of liability because certification would allow putative class members to seek a remedy but not be bound by an adverse judgment, and because the class was unmanageable because it could not be determined to whom notice should be sent); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) (declining to "promot[e] a so-called "fail-safe" class[], whose membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury"); *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (Fail-safe class is one improperly "defined so that whether a person qualifies as a

17

member depends on whether the person has a valid claim. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.").

Here, at first blush these issues are not as problematic because the FDCPA is a strict liability statute and the criteria for class membership are seemingly objective. However, as illustrated by the discussion of Plaintiff above, contested issues nevertheless may arise and require resolution, giving rise to the fairness and manageability objections to fail-safe classes. Accordingly, certification is denied for this additional reason.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification is DENIED.

The Clerk of Court is respectfully directed to close the motion at Docket No. 87.

Dated: September 16, 2021
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE